[Civ. No. 960. First Appellate District.—April 16, 1912.]

# W. H. CONE, Appellant, v. SERENA T. KEIL and HUGO D. KEIL, Respondents.

ACTION FOR BROKER'S COMMISSIONS—AUTHORITY TO SELL TWO TRACTS —INTERESTING PERSON WHO BUYS ONE TRACT FROM OTHER AGENTS —NONSUIT.—Where the written authority of a broker, whose assignee is suing for his commissions on the sale of one of two tracts of land, was for the joint sale of the two tracts, at a fixed price, upon a commission of five per cent, and through the broker's efforts a person became interested in the smaller parcel, but he was not introduced to the owner, and the sale thereof was effected through other agents, the plaintiff was properly nonsuited, because, first, the evidence shows no sale under the written authority, and because, second, the sale on which the commission is claimed was not effected by the broker as the proximate cause thereof.

ID.—ESSENTIALS OF RECOVERY OF BROKER'S COMMISSIONS.—A broker is entitled to his commissions for effecting a sale of property only when it affirmatively appears that the purchaser, as the result of the broker's efforts, was induced to buy the property, or that a prospective purchaser was ready, able and willing to buy upon the terms and at the price specified by the owner. The obligation of

the broker under his contract with the purchaser is to bring about a meeting of minds between the owner and a prospective purchaser for a sale of the property at the price and upon the terms at which the property is offered for sale, and which could be enforced by the owner, if he has a perfect title. Or if there is no contract, it must appear that the broker brought the owner and prospective purchaser together, with the view to effect and secure a contract of sale upon the owner's terms.

ID.—PUTTING PROSPECTIVE PURCHASER UPON TRACK OF PROPERTY ON MARKET.—Merely putting a prospective purchaser on the track of property which is on the market will not entitle the broker to the agreed commission, nor will he be entitled thereto if he finally fails in his efforts, without the fault or interférence of the owner, to induce the prospective purchaser to buy, or make an offer to buy, although the owner may subsequently, either personally or through other brokers, sell the same property to the same individual at the price and terms for which the property was originally offered for sale.

ID.—PLEADING—CAUSE OF ACTION LIMITED TO INDIVISIBLE CONTRACT OF SALE—ABSENCE OF PROOF—PROPER NONSUIT.—Where the complaint states only a cause of action on the written contract authorizing the broker to sell both tracts together, and does not allege any modification of the same, or any other employment of the broker by the owner of the property, it shows an indivisible contract of sale for the entire property, which required the broker to procure a purchaser for the entire tract before he could be entitled to any commissions; and there being an entire absence of proof as to the performance of the contract alleged, for this reason, if for no other, a nonsuit was properly granted.

ID.—EVIDENCE OUTSIDE ISSUES.—Where the assigned claim sued upon by the plaintiff was for commissions on the sale of one tract only, evidence of a subsequent purchase of part of the other tract is outside the issues, and is inadmissible.

ID.—ADMISSION OF LETTER NOT MADE PART OF RECORD—ERROR NOT APPEARING.—Error, to be a ground of review, must affirmatively appear; and where a letter was admitted in evidence which is no part of the record, it must be presumed that the ruling of the trial court in relation thereto was correct.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

William H. Cobb, for Appellant.

Goodfellow, Eells & Orrick, for Respondents.

LENNON, P. J.—This action was instituted to recover the sum of $1,375, alleged to be due as a broker's commission in negotiating a sale of certain real estate which belonged to the defendants. Plaintiff has appealed from a judgment of non-suit and an order denying a new trial. The case was tried by the court without a jury, and the record before us consists of the judgment-roll and a bill of exceptions, which purports to set out the evidence had in the lower court.

In substance, the undisputed facts of the case, as they appear from the evidence offered upon behalf of the plaintiff, are these: On November 15, 1907, the defendants, by an instrument in writing, authorized one Edgar C. Humphrey, plaintiff's assignor, to offer for sale a tract of land in Menlo Park, San Mateo county, containing thirteen and ninety-eight hundredths acres, and known as "Petit Forest." This tract of land consisted of two smaller parcels, designated in the authority sued upon as subdivision A containing six and twenty-five hundredths acres, and subdivision B containing seven and seventy-three hundredths acres. By the terms of the authorization Humphrey was empowered to offer the entire tract for sale for the sum of $45,000 cash, or for such other price and upon such other terms as the defendants might thereafter agree to in writing. Humphrey's compensation in the event of his procuring a purchaser was to be a commission of five per cent upon the amount of the purchase price. Exclusive authority to offer the property for sale was not conferred upon Humphrey, and the defendants never agreed, in writing or otherwise, upon any different price or terms at which the property might be offered for sale.

In October, 1908, almost a year after the authorization was given, Mr. Albert G. C. Hahn went to Menlo Park for the purpose of looking at places which were for rent. Humphrey met him at the station, and took him at once to the defendants' property, and offered the entire tract for sale for the sum of $50,000. Hahn declined to entertain the offer for the reason, as he said, that he "was seeking to rent a house, not to purchase one." Later on, in the spring of 1909, Humphrey endeavored to and did interest Hahn in the tract comprising seven and seventy-three hundredths acres, designated in the authorization as subdivision B, and offered it for sale for the sum of $35,000. Hahn liked this particular piece of prop-

erty and felt inclined to buy it, but not at the price fixed by
Humphrey.. After looking at the property several times in
company with Humphrey, Hahn concluded that the price
asked was prohibitive and so told Humphrey. Thereupon
Hahn dropped the matter and had no further dealings with
Humphrey; but shortly thereafter an agent of the real estate
firm of Baldwin & Howell approached Hahn, and offered him
the identical tract of seven and seventy-three hundredths acres
for the sum of $30,000. This offer was considered by Hahn,
and the property was sold to him for $27,500, but before the
negotiations for the sale were commenced, Hahn met Hum-
phrey and told him of the offer made by Baldwin & Howell,
whereupon Humphrey requested that Hahn purchase the
property at the price of $30,000 through him. Hahn declined
to have any further dealings in the matter through Hum-
phrey; and told him that inasmuch as the firm of Baldwin &
Howell had offered the property for sale for $5,000 less, the
purchase would be made through them. In reply Humphrey
said: "I have nothing further to say. All that I can do is
to submit the bid that you offer. If you wish to make an offer
for the property I will be glad to submit it for you." This
ended all negotiations for the sale of the property between
Hahn and Humphrey. Hahn subsequently made an offer in
writing, through Baldwin & Howell, for the purchase of the
property, which was accompanied by a deposit of $275.

It is conceded that Hahn became interested in the property
in the first instance solely through the efforts of Humphrey,
and that when the other brokers appeared in the transaction,
Hahn, as the result of Humphrey's efforts, was fully informed
concerning the property. Either on the day or the day after
Hahn had made an offer for the property through Baldwin &
Howell, Humphrey informed the defendants that he had been
endeavoring to induce Hahn to buy the property. Hahn and
the defendants, however, were never introduced, and Hahn
did not meet or communicate directly or indirectly with either
of the defendants prior to the time that the offer to purchase
was made through Baldwin & Howell. It is an admitted fact
in the case that Hahn never made through Humphrey, in
writing or otherwise, an offer to purchase the property in ques-
tion either as a whole or in part, and Hahn's testimony that

he flatly refused to make an offer for the property through Humphrey stands uncontradicted.

Excepting minor details, the foregoing statement constitutes a fair *résumé* of the facts of the transaction upon which plaintiff relies for a recovery of the commission sued for.

The defendants' motion for a nonsuit was based upon the grounds (1) that the evidence failed to show that Humphrey ever procured a purchaser for the entire tract for the sum of $45,000, and (2) that the evidence shows that Humphrey was not the proximate and efficient cause of procuring and securing Hahn as a purchaser of the smaller tract of land.

We are of the opinion that the motion for a nonsuit was properly granted upon both of the grounds stated.

A broker is entitled to his commission for effecting a sale of real or personal property only when it affirmatively appears that the purchaser, as the result of the broker's efforts, was induced to buy the property, or that a prospective purchaser was ready, able and willing to buy upon the terms and at the price specified by the owner. In other words, the obligation of the broker under his contract to procure a purchaser is to bring about a meeting of minds between the owner and a prospective purchaser for a sale of the property at the price and upon the terms at which the property is offered for sale. Before the broker's right to a commission can accrue he must first show that he found and secured a purchaser ready, willing and able to buy the property offered for sale upon the terms and at the price fixed by the owner. Such a showing can be made only by proof of the fact that the broker procured from the prospective purchaser a valid contract, binding him to purchase the property at the price and upon the terms specified, which could be enforced by the owner if his title to the property be perfect, or, in the absence of such a contract, by proof that the broker brought the owner and prospective purchaser together with the object in view of effecting and securing a contract of sale at the price and upon the terms proposed by the owner. (*Gunn* v. *Bank of California*, 99 Cal. 349, [33 Pac. 1105]; *Mattingly* v. *Pennie*, 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200]; *Brown* v. *Mason*, 155 Cal. 155, [99 Pac. 867].)

Merely putting a prospective purchaser on the track of property which is on the market will not suffice to entitle the

broker to the commission contracted for, and even though a broker opens negotiations for the sale of the property, he will not be entitled to a commission if he finally fails in his efforts, without fault or interference of the owner, to induce a prospective purchaser to buy or make an offer to buy, notwithstanding that the owner may subsequently, either personally or through the instrumentality of other brokers, sell the same property to the same individual at the price and upon the terms for which the property was originally offered for sale. (*Markus* v. *Kenneally,* 19 Misc. Rep. 517, [43 N. Y. Supp. 1056]; *Willard* v. *Ferguson,* 125 App. Div. 868, [110 N. Y. Supp. 909].)

Although in the present case Humphrey was the first person to arouse Hahn's interest in the property, nevertheless he failed ultimately in his efforts to induce Hahn to buy or offer to buy, and, therefore, it cannot be said that Humphrey's efforts were the procuring cause of the sale subsequently made to Hahn.

As was said in *Sibbald* v. *Iron Co.,* 83 N. Y. 378, [38 Am. Rep. 441]: "A broker may have created impressions which under later and more favorable circumstances naturally lead to and materially assist in the consummation of a sale. He may have planted the very seeds from which others reap the harvest. But all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligations, others might be left to some extent to avail themselves of the fruits of his labors."

At no time did Humphrey obtain from Hahn a valid or any contract to purchase the property in question. Humphrey did not succeed even in procuring an offer for the property from Hahn, and at no time did Humphrey bring or attempt to bring the owners and Hahn together so that the owners, if they had desired, might have negotiated a sale. Moreover, Hahn testified positively and without contradiction that prior to making an offer for the property through Baldwin & Howell, he had absolutely refused to deal with Humphrey or make an offer through him. In short, it is a fair inference from the evidence offered in support of plaintiff's case that in all probability the sale never would have been made without the intervention and subsequent efforts of Baldwin & Howell.

Aside from these considerations the plaintiff's complaint sets out the written contract of the defendants authorizing a sale of the entire tract, and alleges that in accordance with the terms thereof, and while the same was in full force and effect, Humphrey procured Hahn as a purchaser for subdivision B, containing seven and seventy-three hundredths acres of the property described in said contract. Plaintiff's complaint does not allege and his evidence does not show any other employment of Humphrey with relation to a sale of defendants' property. No other agreement is pleaded, and there is no evidence of any agreement to compensate Humphrey for any service which he might render to the defendants other than that contained in the original written authorization, by which he was employed and authorized to sell the defendants' property as a whole. Not having been otherwise specially authorized, Humphrey's agency was limited to the particular purpose of his original employment, and his compensation depended upon his accomplishment of that purpose in accordance with the terms of his contract. It was not pleaded by the plaintiff that the original authorization was ever modified, either expressly or by implication, and, therefore, it is apparent that the plaintiff's cause of action, if any he has, must rest upon proof of compliance with the terms of his actual contract. That, as we read and understand it, required Humphrey to procure a purchaser for the entire tract before he would be entitled to the stipulated commission. Clearly, the contract in question did not authorize Humphrey to offer for sale separately either subdivision of the entire tract, nor contemplate that the defendants could be required to pay a commission for the procurement of a purchaser for anything less than the entire tract.

This being so, the contract was indivisible; and before the plaintiff will be permitted to recover thereon, he must plead and prove the performance of the entire contract. For this reason, if for no other, a nonsuit was properly granted. (*Wittie* v. *Taylor,* 110 Cal. 225, [42 Pac. 807]; *Carpenter* v. *Atlas Imp. Co.,* 123 App. Div. 706, [108 N. Y. Supp. 547]; 3 Devlin on Real Estate, sec. 1536.)

In support of the appeal from the order denying a new trial plaintiff assigns as error two of the trial court's rulings upon

questions of evidence, but we do not think the record shows that the trial court erred in either instance.

The first ruling complained of arose out of the cross-examination of Hahn, the purchaser and a witness for the plaintiff, who testified that he had purchased from the defendants subsequently to the sale of the seven and seventy-three hundredths acre tract another piece or parcel of the larger tract of land which Humphrey was originally authorized to sell. Upon redirect examination counsel for plaintiff endeavored to show how much more of the entire tract Hahn had purchased in addition to the seven and seventy-three hundredths acre tract. This was objected to by counsel for the defendant upon the ground that it was immaterial and not within the issues raised by the pleadings in the case.

The objection, we think, was well taken and rightfully sustained. If the plaintiff had pleaded a full performance of Humphrey's contract with the defendants, and had relied upon a sale of the entire tract for a recovery of the commission claimed to be due, it would have been material and relevant for the plaintiff to show, if he could, that as the result of his efforts Hahn had bought not only subdivision B, but all of subdivision A as well. Plaintiff's cause of action, however, was founded exclusively upon the theory that Humphrey was the sole procuring cause of the sale to Hahn of the seven and seventy-three hundredths acre tract, and it was not alleged in plaintiff's complaint nor claimed at the trial that Humphrey was instrumental in making a subsequent sale to Hahn of any other lands belonging to defendants. In brief, the plaintiff's cause of action was based solely upon an assigned claim for the commission alleged to be due and owing to Humphrey for the sale of subdivision B, and, therefore, it was not material to know under the issues raised by the pleadings whether or not Hahn had subsequently purchased from defendants another portion of the entire tract. The fact that upon cross-examination Hahn had testified without objection to an immaterial matter did not entitle the plaintiff, in the face of defendants' objection, to examine further into the details of a transaction which was wholly foreign to the issues.

With reference to the second assignment of error it will suffice to say that it does not appear from the record before

us that the trial court erred in sustaining an objection to a question put to the defendant Hugo D. Keil, whereby the plaintiff attempted to show that Keil represented his wife in the sale of property which was referred to in a certain letter written by him. It does not appear to whom the letter was written nor to what property it referred; and as the letter was not made part of the record upon appeal, we are unable to determine whether or not the court erred in its ruling. Error must be affirmatively shown, and in the absence of such a showing the presumption prevails that the ruling of the trial court was correct. (*Marshall* v. *Hancock*, 80 Cal. 82, [22 Pac. 61] ; *Barrell* v. *Lake View Land Co.*, 122 Cal. 129, [54 Pac. 594].)

The judgment and order appealed from are affirmed.

Hall, J., and Kerrigan, J., concurred.