# CHARLESTON.

EDWARD G. KIMMELL v. DAVID W. MOHLER

(No. 5740)

Submitted October 5, 1926.   Decided October 12, 1926.

1. APPEAL AND ERROR—

   Only reasonable certainty that a bill of exceptions is the one named in the order making it a part of the record is required.   (p. 357.)

   (Appeal and Error, 4 C. J. § 1648.)

2. BROKERS—*To Be Entitled to Commission, Broker Must Show That he Was Efficient or Procuring Cause of Sale of Property Listed With Him and Offered to Purchase, Who Afterwards Dealt With Owner; in Action by Broker for Commission, Evidence Held Not to Support Judgment for Plaintiff.*

   To be entitled to commissions a broker must show that he was the efficient or procuring cause of the sale of property listed with him and offered to a purchaser who afterwards dealt with the owner.   (p. 358.)

   (Brokers, 9 C. J. § 95.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Mineral County.

Action by Edward G. Kimmell against David W. Mohler for a broker's commission. Judgment for plaintiff, and defendant brings error.

*Judgment reversed and judgment entered for defendant.*

*William MacDonald* for plaintiff in error.
*R. A. Welch* for defendant in error.

: Miller, Judge:

This case is here on writ of error to a final order of the trial court, overruling. defendant's demurrer to plaintiff's evidence, and entering judgment for the plaintiff on the conditional verdict of the jury.

Plaintiff objects to a consideration of the evidence by this court, on the ground that it was not made a part of the record by a properly identified bill of exceptions. The order of the circuit court, entered on March 24, 1926, in term time, making the transcript of the evidence a part of the record, recites that: "Thereupon the defendant tendered a transcript of the evidence taken before the jury at the trial of this suit, by the official court reporter who took the said evidence, which is endorsed for identification 'Transcript of testimony, Original copy' on the front. outside page thereof, which also presents the ruling of the court on the objections to evidence, and the exceptions thereto, and prayed that it be certified and made a part of the record in this case, which is accordingly done and marked 'Defendant's. Bill of Exceptions No. 1.'" The bill of exceptions found in the record is headed as follows: "Transcript of Testimony—Filed Feb. 23, 1926. P. W. Dayton, Clerk. In the Circuit Court of Mineral County, West Virginia. Edward G. Kimmell vs. David W. Mohler. Transcript of testimony. On the 14th day of December 1925 the above entitled action came regularly on for hearing before the Honorable A. Jay Valentine, Judge of the above entitled court, and a jury upon the pleadings heretofore filed herein. Present: Mr. R. A. Welch, Counsel for Plaintiff, Mr. William MacDonald, Counsel for Defendant. And

thereupon the following proceedings were had and testimony taken, to-wit:''

The objection is that the purported bill of exceptions as it appears in the printed record, is headed: ''Transcript of testimony—Filed Feb. 23, 1926, P. W. Dayton, Clerk''; while the order calls for, ''Transcript of testimony, Original copy,'' and ''Defendant's Bill of Exceptions No. 1.'' But the transcript of the testimony in the record, in the caption thereto, recites that the proceedings therein recorded were had on December 14, 1925; and the order of the court of December 14, 1925, shows that the trial was begun and completed on that day. The case is the same, the court the same, and the date the same. There can be no doubt that the transcript of evidence marked as above described was that referred to in the order of March 24, 1926. All that is required is reasonable certainty. *Marshall* v. *Stalnaker*, 70 W. Va. 394, and cases cited.

Plaintiff's action was for commissions alleged to be due him for making sale of defendant's house and lot to one Sanders. Plaintiff testified that in January 1925, the defendant placed in his hands for sale the property in question, at the price of $7,500.00, ''under conditions''; that ''sometime the first of March, maybe as late as the 10th of March,'' Sanders came into his office ''to buy or rent'' a house; that he told Sanders he had no property for rent at that time, but that he had the Mohler property for sale, at the price of $7,500.00; that Sanders said that was more than he cared to pay for the property; and that he and Sanders had no further conversation in regard to the Mohler property. It does not appear under what conditions he had the property for sale, or that he told Sanders of such conditions.

Sanders, a witness for plaintiff, testified that some time during the winter, on learning that the house in which he lived had been placed on the market, he inquired of plaintiff if he had any houses for rent; that the latter called his attention to several pieces of property he had for sale, including the Mohler property, naming the price for it at $7,800.00; that he told plaintiff the price was more than he

could pay, and did not talk to him any more; that late in February or the first of March, he received another notice that the property where he lived had been sold; that he then began to look for another place, and negotiated for a house, which he did not, however, secure; that he had some information that the family living in the Mohler house was about to vacate, and while looking for a house, on passing the Mohler property one day, he made arrangements with the lady living there to bring his wife and look at it, which he did the next day. He says that his conversation with this lady confirmed his information that she was going to vacate the house; that he then went to defendant with this information, and asked to rent the property; that after defendant learned definitely that his tenant was in fact going to move out, he rented the house to him for $40.00 per month, with the understanding that the latter was to have the refusal of buying it as cheap as any other bidder, if it was to be sold. He says that he learned a few days later that Mohler's tenants were undecided when they would be able to vacate, and he made an offer to defendant to purchase the property for $7,000.00, $3,000.00 in cash, and the remainder in small monthly payments. Defendant accepted this offer. According to Sanders the sale was made some time after the first of April, the deed being dated April 15th.

Defendant testified that he at first rented the property to Sanders, but afterwards learning that his work would take him to another city, he decided to sell. He says he was to have $3,000.00 in cash, and the balance in monthly payments of $40.00 each. His testimony is not in conflict with plaintiff's evidence on any material point, and may be considered, although the case is before us on demurrer to the evidence.

To entitle plaintiff to commissions, he must show that he was the efficient or procuring cause of the negotiations resulting in the sale of the property. *Cooper* v. *Upton,* 60 W. Va. 648. If the final negotiations resulting in the sale were carried on by the owner and not by the agent, the latter must have been the efficient cause of the negotiations by the purchaser in order to entitle him to commissions. *Halterman*

v. *Leining,* 90 N. Y. S. 397. In *Realty Company* v. *Burcum,* 129 Va. 466, it was held that the activities of the plaintiff's salesman were not the procuring cause of the sale of property listed with the broker, although the salesman had pointed out the property to the purchaser, described the house and boundaries, stated the price, and offered to drive in to look at the property if the purchaser desired, which offer was declined, where there was evidence to show that the purchaser's interest was quickened by a description of the property by another person the following day which prompted a trip to the property with another party that led to the negotiations resulting in the ultimate purchase of the farm. ''It is indispensible, but also held to be sufficient, that the broker's efforts were the efficient, procuring or producing cause of the sale; that through his agency the purchaser was brought into communication with the seller and bought of him, although the parties then negotiated in person.'' 2 Mechem on Agency, (2nd Ed.) §2435, pp. 2010-2011.

It is not sufficient that the broker's acts are one of the chain of causes leading to the contract, as such acts must be the procuring or inducing cause, or, in other words, the *causa causans. Ramsey* v. *West,* 31 Mo. App. 676. And the mere naked fact of the broker's introducing the purchaser to the seller or disclosing names by which they came together, is not enough to entitle him to commissions. *Keener* v. *Harrod,* 2 Md. 63, 56 Am. Dec. 706. Merely being instrumental in putting the purchaser on the track of the property is not of itself sufficient. *Sievers* v. *Griffin,* 14 Ill. App. 63. Where the purchaser, though spoken to by the broker, has abandoned the idea of the purchase, and the broker has no influence in bringing the sale about, he can not be said to be the procuring cause of such sale. *Doonan* v. *Ives and Krouse,* 73 Ga. 295; *Livezy* v. *Miller,* 61 Md. 336. And a mere conjecture that the broker is the efficient or procuring cause of the sale will not be sufficient to prove such fact. *Markus* v. *Kenneally,* 19 Misc. 517, 43 N. Y. S. 1056. If the evidence does not show that the broker in some way influenced

the sale, he can not recover commissions, and a verdict in his favor will be set aside. *Commercial National Bank* v. *Hawkins*, 35 Ill. App. 463. See also, 9 C. J. 611, et seq. and notes in 9 Am. & Eng. Ann. Cas, 433, and Ann. Cas. 1913-D, 437; *Earp* v. *Cummins*, 54 Pa. St. 394, 93 Am. Dec. 718; *Walker* v. *Osgood*, 98 Mass. 348, 93 Am. Dec. 168.

While it is settled law that the broker is entitled to commissions if he is the efficient or procuring cause of the sale, though made by the owner, the evidence must show that the broker was the procuring cause.

No actual negotiations were carried on between the plaintiff and Sanders. Plaintiff simply called Sanders' attention to the Mohler property and named a price, along with a number of other properties he had for sale. At that time, according to all of plaintiff's evidence, Sanders declined to purchase, and made no further inquiry about the property. He says he asked plaintiff if he had any places to rent. There is no evidence tending to show that he contemplated purchasing property at all, or that he became interested in the Mohler property until he was notified that the house where he was living had been sold, and after he was informed that Mohler's house was about to become vacant. At the time he did become interested he was out looking for a house, and had negotiated for one, which for some reason he did not secure. He went to Mohler with a proposition to rent, not to purchase, and did rent the latter's house. Mohler had no knowledge that plaintiff had mentioned his property to Sanders, and he only entered into negotiations to sell after he learned that his work would take him to another city. It does not appear that Sanders gave any thought to plaintiff's offer, but only went to look at the property after he had learned from some source that it would be vacated. He gives other reasons than that plaintiff told him of the property being for sale, which prompted him to purchase it.

Plaintiff's evidence is not sufficient to support his claim, that he was the procuring cause of the sale. Only by conjecture could the jury have found that his efforts caused Sanders to look at the Mohler property, or consider it,

either with a view of renting or purchasing. A verdict for plaintiff could not have stood.

The judgment of the circuit court will be reversed, the demurrer to the evidence sustained, and judgment entered for the defendant.

*Judgment reversed, and judgment entered for defendant.*