## PATRICK CONNELLY vs. THEODORE DEVOE.

The plaintiff agreed to dig and stone a well for the defendant within ten days at a certain price per foot. He commenced work and continued for ten days when the sides caved in and it became necessary to curb it with plank, which plank the defendant procured. The plaintiff continued the work for seventeen days longer, when water was reached. Work was then suspended for four days, at the end of which time the defendant told the plaintiff that unless the work was completed within two or three weeks from that time he should wait no longer. The plaintiff was proceeding to draw stone and intended to perform the contract within the extended time when the defendant forbade him to work there longer and filled up the well. In an action of general assumpsit for work done, brought by the plaintiff, it was held—1. That the limitation of time in the original agreement was to be regarded as waived by the defendant from time to time until the substituted agreement was made by which the time was extended. 2. That there was a sufficient consideration for the substituted agreement. 3. That the defendant could not avail himself of the non-performance of the substituted agreement by way of defense, because he

Connelly *v.* Devoe.

had himself prevented the performance. 4. That the plaintiff had a right to rescind the agreement and sue in general assumpsit for work and labor. 5. That the plaintiff's right to recover in general assumpsit was not limited to work done under the substituted agreement, but embraced all the work done. Where the court below did not find in terms that the defendant had waived the performance of the agreement within the time originally limited, but did find that after the time limited had expired the defendant furnished plank for curbing, so that the work might go on, and that the work was continued with his knowledge and acquiescence, it was held that it clearly appeared that the defendant had waived the performance of the agreement within the time originally limited.

ASSUMPSIT, brought by appeal from a justice to the Court of Common Pleas in Fairfield county, and tried on the general issue, with notice closed to the court, before *Brewster, J.* The declaration contained a special count for work in digging a well under a contract with the defendant, the full performance of which by the plaintiff was prevented by the defendant, although the plaintiff had partly dug the same and was ready and willing to complete it. The declaration contained also a general count for work and labor.

On the trial it was proved that the defendant, on the 16th of June, 1870, hired the plaintiff to dig and stone a well on his premises. By the terms of the contract the plaintiff was to dig the well to such a depth that there would be three feet of water in it after it was stoned, and it was to be three feet in diameter. The plaintiff was to furnish the planking, the stone, and all the other materials required for the work, with the exception of the bottom curb, which was to be furnished by the defendant. The price agreed upon was $3.12 per foot of depth. The work was to be begun at once and finished by the 25th of June.

On the 17th of June the plaintiff commenced work and continued it with his men for ten days, at the end of which time, as the sides began to cave in slightly, it became necessary to place planks against them to prevent a further caving. The plaintiff having no means to procure the planks, they were procured by the defendant. It then became necessary for the further prosecution of the work to use a windlass and tools, the procuring of which occupied several days. With

the knowledge and acquiescence of the defendant, the plaintiff and his men went to work with the windlass and tools, to take out the earth which had fallen in from the sides, and to dig the well deeper. A depth of thirty feet was reached, the bottom curb put in, and the water filled in to the depth of two and a half feet, at about the 12th of July. The plaintiff and his men then left the work again in order to enable him to procure money for his workmen, and on the 16th of July the defendant told him that unless the work was completed in two or three weeks from that time he should wait no longer, and it was then understood by the parties that the work was to be completed in that time. Meanwhile stone was drawn for the stoning of the well, and the plaintiff intended to fulfil the contract within the extended time. On the 22d of July the defendant, perceiving that the well had caved in badly, commenced digging another within two feet of it and to fill up the one dug by the plaintiff, whereby the latter was prevented from finishing his work, and the defendant put an end to the contract by filling up the well, and at the same time informing the plaintiff that he should work there no more. It had at this time caved in so as to fill the well to the height of four or five feet from the bottom, and it would have cost the plaintiff as much labor to finish it as to dig a new one.

The work performed by the plaintiff was done in a workmanlike manner, except that the delay rendered the sides more likely to fall in. The sand near the bottom proved to be unusually bad for the purpose of well-digging, and the ascertainment of this fact and the knowledge of the depth required to reach the water were all the benefits derived by the defendant from the work.

There was no evidence to show that the water in the well was at any time more than two and a half feet in depth. After the filling up of the well by the defendant it was impossible for the plaintiff to perform the contract within the extended time.

On these facts, the plaintiff claimed, as matter of law, that he was entitled to recover on the special count for the number

of feet dug at the rate agreed upon, and if not, that he was entitled to recover on the common counts for the work actually done. The defendant claimed, as matter of law, that on the facts the plaintiff could not recover on the special count because the contract was not performed as agreed, and the court so held. The defendant also claimed, as matter of law, that the plaintiff was not entitled to recover upon the general counts, because the contract for the work was a special one, unperformed, which had never been legally rescinded, and requested the court so to decide. But the court held, as matter of law, that the plaintiff was entitled to recover under the common counts for the work actually done, and rendered judgment for the plaintiff to recover the sum of $78.60, and his costs.

The defendant moved for a new trial for error in the rulings and judgment of the court.

*Sturges*, in support of the motion.

The court finds a contract proved for digging and stoning a well of a specified depth and for a specified price ; the work to be begun immediately and completed by the 25th of June; and that the well was never completed. The completion was a condition precedent to be performed before any right to compensation accrued. But the court finds that on the 16th of July, a month after the contract was made, the defendant told the plaintiff that unless the work was completed in two or three weeks he should wait no longer, and that it was then understood by the parties that the work was to be completed in that time. Here was no new contract made. If the plaintiff promised to complete the work in that time, he only promised to do what he was then under a binding obligation to do. It was therefore no detriment to him to agree to do the work. It was no benefit to the defendant to receive such promise, for he had already the promise of the plaintiff to perform the work, and a right of action against him besides. There was then no consideration for a promise of the defendant to wait, even if he made such promise. But the court does not find any such promise. There is no finding that this new under-

standing was received as a substitute for the original contract. It left the original agreement in full force, and the defendant could have sued the plaintiff at any time for a breach of it. The plaintiff has never rescinded or assented to a rescision of the contract. He sets forth a special contract in his dec-- laration, and claims it to be in full force, and broken by the defendant only. An action certainly cannot be sustained on a rescinded contract. The court indeed has held as matter of law upon the facts found, that the parties waived the contract. But this is error; the facts found will not justify such conclusion of law. The court, to be sure, has found that the defendant told the plaintiff not to work there any more. If there was no new contract, he had a right to say this, for the plaintiff had broken the contract and had no right to persist in the work. If there was a new contract, nothing having been done under it, the only remedy is in a special action upon it. If a new binding agreement had been made which the plaintiff was prevented from performing by the wrongful act of the defendant, and the plaintiff had thereupon rescinded the new agreement, he could recover on the common counts only for work done under the new agreement. But the court does not find any work done after the 16th of July, when it is claimed a new agreement was made. If it had been stip ulated in a new agreement that the defendant should also pay for the work done under the original agreement, the plaintiff's remedy would be upon the new special agreement. If he should resort to the common counts, he would be met by the objection that it was done under an agreement unperformed and unrescinded. Whether the facts constituted a rescision of the special contract is a question of law. The court has not found a rescision, but has found certain facts, from which it deduces the conclusion of law that it was rescinded by the parties. This is erroneous. The court has found substantially that the work done was of no value to the defendant, and that the filling of the well was no damage to the plaintiff, so that the labor done was of no value to any one; and yet the court has rendered judgment for the whole contract price, less the money advanced to the plaintiff for

planks to brace the well, and the value of the labor necessary to stone the well, which was not performed; and without finding what the value of the labor performed was. · In this there is error, and as this court cannot find what that value was, the only way to correct it is by a new trial.

*G. Stoddard,* contra.

If there is a special contract, though only partially executed, the complete fulfilment of which has been prevented by the wrongful act of the defendant, the plaintiff clearly may waive his special count and recover in general assumpsit. The court finds as a fact that the unauthorized act of the defendant rendered it impossible for the plaintiff to fulfil his contract, and also finds as a fact that the defendant put an end to this contract by filling up the well

PARK, J. It appears by the finding of the court that a contract between the parties existed till the 22d day of July, when " the defendant put an end to it." The limitation in the original agreement had been waived by the defendant from time to time, owing to the unexpected difficulties the plaintiff encountered in digging the well, till the 16th day of July, when the agreement stated in the finding of the court was made between the parties. We cannot say, as a matter of law, that this substituted agreement was not valid. There was no actionable breach of the original contract when it was made, for the breach had been waived and the time extended. The defendant contends that this was not so. He insists that the court has not found that the defendant waived the time mentioned in the original agreement. It is true that the court has not so found in terms, but it· has found what is equivalent. It is found that after the time limited in the original agreement had expired, the defendant, at his own option, furnished plank to prevent the well from continuing to cave. At that time it was evident that considerably more time would be required to finish the well than was at first supposed. The work could not be completed without such additional time, and the furnishing of the plank shows that the

defendant expected that it would be completed and consented to the unavoidable delay. The court has found that the work progressed with the knowledge and acquiescence of the defendant to the 16th day of July, when the agreement in question was made, which of itself was a waiver of all past delinquencies, and that this agreement subsisted on the 22d day of July, when " the defendant put an end to it." We think it clearly appears that the defendant waived the time mentioned in the original agreement.

But it is said that there was no consideration for the substituted agreement, and that therefore it had no validity.

The abandonment of the original contract then in force, pursuant to the understanding of the parties, to substitute the new agreement in its place, was a sufficient consideration. And further, it was for the interest of the defendant that the work should be completed. He had doubtless made a good contract. Should the work stop where it was he would lose the benefit of it. The injury he had experienced by the delay was simply the loss of the benefit of his well for a few days. It was now absolutely certain that that benefit could not be experienced for some time to come, whoever might do the work. The plaintiff could do it as quickly as any one. By so doing the defendant would reap the fruits of his contract. Surely it was for his interest to make the agreement. And besides, the defendant suffered the plaintiff to go on with the work after the agreement was made, under the expectation of being allowed the extended time for the completion of the work. We think there was sufficient consideration for the agreement.

2. The defendant prevented the plaintiff from performing the contract, and now sets up the non-performance thereof as a matter of defence to a suit on the contract.

Under such circumstances it was optional with the plaintiff to rescind the agreement, and resort to indebitatus assumpsit for work and labor performed under the contract at the defendant's request. Parsons, (2d Vol. on Contracts, page 523,) says : " If one party is prevented from fully performing his contract by the fault of the other party, it is

clear that the party thus in fault cannot be allowed to take advantage of his own wrong, and screen himself from payment for what has been done under the contract. The law therefore will imply a promise on his part to remunerate the other party for what he has done at his request." In the case of *Moulton* v. *Trask*, 9 Met., 577, SHAW, C. J., says:—"The case put by the judge was, that if the further performance of the contract had been dispensed with, or prevented by the defendant, the plaintiff might declare in indebitatus assumpsit for the part of the money already earned conformably to the terms of the contract. The instruction rightly proceeded on the ground that if the defendant had, without justifiable cause, prevented the further performance of the contract, the plaintiff, by bringing his action for the part of the year during which the son had served, thereby assented to the act of the defendant, and the contract was thereby determined." See also *Giles* v. *Edwards*, 7 T. R., 181; 2 Greenl. Ev., § 140; *Hill* v. *Green*, 4 Pick., 114; 2 Smith's Leading Cases, 40.

The defendant further claims that this principle applies no farther than to the work done after the substituted agreement was made. But that agreement was substituted in the place of the original agreement. The original agreement was abandoned, and the new agreement took its place by the understanding of the parties. The new agreement therefore covered all the ground occupied by the original agreement.

A new trial is not advised.

In this opinion the other judges concurred.