A. NICHOLAS SASSO vs. THE K. G. & G. REALTY AND
CONSTRUCTION COMPANY ET ALS.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The mutual promises made by the parties in a new agreement, upon the
voluntary rescission or abandonment of their original contract,
constitute a valid and sufficient consideration for their respective
undertakings.

The plaintiff had contracted, for a stated sum, to furnish and place all
the marble tiling required in an apartment house the defendant
was building, but owing to the rapid rise in price of such material
was unable to get the tile and so informed the defendant, who,
being anxious to finish the building, agreed that if he would go on
with the tile job, the defendant would accept tile of an inferior
quality and would pay him the difference in cost, and also advance
him money from time to time to enable him to pay cash for the
tile which was bought; to which the plaintiff agreed and went on
and finished the job. Held that the benefit to the defendant arising
from the speedy completion of the building constituted a valid
consideration for the new or modified agreement.

An appellant is not entitled to urge in this court that a contract was
procured by duress, in the absence of any such issue in the plead-
ings.

The defendant assumed that the trial court had treated its letter to
the plaintiff, which was offered in evidence, as the foundation for
the modified or new contract. Held that this assumption was un-
founded.

A litigant who makes no claim of variance between the pleadings and
proof upon the trial upon its merits, will ordinarily be deemed to
have waived the objection, and cannot urge it for the first time in
this court upon appeal.

Argued January 18th—decided March 1st, 1923.

ACTION to foreclose a mechanic's lien, brought to
and tried by the Superior Court in New Haven County,
*Hinman, J.;* facts found and judgment rendered for
the plaintiff, fixing the amount due at $2,649.90, and
appeal by the defendant Realty and Construction
Company. *No error.*

*Louis Sachs* and *Joseph I. Sachs,* for the appellant (defendant Realty and Construction Company).

*Philip Pond* and *Raymond E. Baldwin,* for the appellee (plaintiff).

CURTIS, J. The finding discloses that in February, 1920, the defendant construction company was erecting an apartment house in New Haven, and on February 10th, 1920, entered into a contract with the plaintiff, whereby he agreed to furnish all materials and labor necessary to do all the marble and tile work in the building according to the architect's plans, except as provided in the contract, for the sum of $7,800; the contract provided that all work should be done in Italian marble, or equal quality, samples to be submitted for owner's approval, and work to commence when the defendant notified the plaintiff to begin, and to proceed continuously until completed.

Before the execution of this contract the plaintiff, in anticipation of securing the contract, had ordered from a tile company on February 9th, 1920, tile suitable and necessary to complete the building according to the plans. From February 9th until June 5th, 1920, the plaintiff made all reasonable efforts to secure the delivery of tile from that company to perform his contract, but was unable to secure any tile or get a definite shipping date for any tile, and was finally informed on June 5th, 1920, by the tile company, that they could not handle his order of February 9th. The plaintiff informed the defendant of these efforts to secure tile and of the results; the defendant urged him to get tile elsewhere and told him that he could get tile in New York City.

From and after February 10th, 1920, tile advanced rapidly in price, and it became exceedingly difficult to

purchase tile at any price, and such as was obtainable was of inferior quality.

The plaintiff informed the defendant of the scarcity of tile, of its advanced price and inferior quality, that tile could be had for immediate delivery only upon payment of cash therefor, and that he could not proceed with the completion of his work unless defendant would pay, in addition to the contract price, the difference between the cost of tile as originally figured in making up the contract price, which cost so figured was $2,905.83, and the cost of tile that could now be secured for immediate delivery, and would advance sufficient moneys to enable plaintiff to pay cash for such tile.

On or about May 1st, 1920, the building was ready for the installation of tile, and defendant was very anxious to have its building completed as soon as possible, and as an inducement to the plaintiff to continue, expedite and complete the performance of the contract, defendant agreed with plaintiff upon a modification of the original contract, to the effect that the defendant would pay the plaintiff, in addition to the contract price, the difference between the cost of tile as originally figured in making up the contract price, and the cost of tile that could now be secured for immediate delivery and should be so obtained for use on the job, and that the defendant would advance, from time to time, the cost of such tile as were needed in order that cash payment could be made by the plaintiff.

Pursuant to this agreement the plaintiff and his agents, aided by the defendant and its agents, purchased in New York tile to be used on the job, and plaintiff proceeded with the performance of the contract as modified.

On August 4th, 1920, the plaintiff wrote to the defendant requesting a confirmation in writing of these modifications. The defendant on August 10th, 1920,

replied in these terms: "On February 10, 1920, you entered into a contract with our company to perform certain work and furnish materials for our building at numbers 516–518 Orange Street, this city. You have been delayed in your work on account of the scarcity of tile and in the meantime the price of materials has advanced. We are, therefore, willing in order to assist you in completing your contract, to agree to pay to you the difference in the cost of materials over and above the prices submitted in a schedule that you sent us. This increase is to be paid to you, upon your finishing your work within two weeks from this date. We will do our best to help you obtain material for your work."

After August 10th, 1920, and until September 4th, 1920, the defendant continued to pay for tile purchased, up to and including September 24th, 1920, for use in the defendant's building. The amount so paid for tile was $2,375.59 in excess of the cost of tile as originally figured by the plaintiff in making up the contract price. The plaintiff fully performed and completed the modified contract before October 30th, 1920. The tile used was of a quality inferior to that originally contemplated by the parties, and the defendant, with knowledge of this fact, approved of and accepted such tile. The original contract price, together with amounts due the plaintiff for extra work, which was undisputed, amount to $8,823.53. The court found that the additional sum of $2,375.59 was due the plaintiff under the defendant's agreement in the modified contract to pay the excess of the actual cost of tile over the sum the plaintiff figured as the cost of tile in making up his contract price. After deducting from the sum of $11,199.17, found due the plaintiff, the payments which it is found that the defendant had made under the modified contract, the sum of

$2,649.90 was found due the plaintiff, and a judgment of foreclosure was rendered thereon.

The defendant's fundamental claim of error on its appeal is, that the finding by the court that there was a modification of the contract of February 10th, 1920, was erroneous, because, under the subordinate facts found, it appears that there was no consideration for the agreements of the defendant which constitute the modifications of the contract found. The plaintiff claims that it appears from the finding that there was a consideration for such promises.

It is immaterial that the promises made by the defendant to secure the completion of the marble and tile work on the building is called a modification of the original contract. What actually happened was, that under the circumstances set forth above the plaintiff was, without fault on his part, in a position where he could not carry out his contract with the quality of tile contracted for. The defendant was confronted with an approaching breach of contract by the plaintiff. Instead of awaiting such breach and relying on an action upon the breach, it preferred to contract with the plaintiff to complete the contract with inferior tile costing more money than the plaintiff figured that the better tile would cost him when he made up his contract price. This constitutes a rescission or abandonment of the original contract and the making of a new contract which is based on a valid consideration, namely, the mutual promises there made by the parties. "The abandonment of the original contract then in force, pursuant to the understanding of the parties, to substitute the new agreement in its place, was a sufficient consideration." *Connelly* v. *Devoe,* 37 Conn. 570, 576. If two persons enter into a written contract, which one refuses to fulfil, and the other makes a new contract with him, which operates as a rescission of the

original contract, the new contract is founded upon a sufficient consideration. *Rollins* v. *March,* 128 Mass. 116; *Rogers* v. *Rogers & Brother,* 139 Mass. 440, 1 N. E. 122. An executory bilateral written contract may be varied by a subsequent oral agreement between the parties. The contract when modified by the subsequent oral agreement is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract. *Thomas* v. *Barnes,* 156 Mass. 581, 31 N. E. 683. "A plaintiff, having entered into a contract with the defendant to do certain work, refuses to proceed with it, and the defendant, in order to secure to himself the actual performance of the work in place of a right to collect damages from the plaintiff, promises to pay him an additional sum." The Supreme Judicial Court held that this was a valid promise, upon the doctrine that under the circumstances there was a new consideration for the promise. *Parrot* v. *Mexican Central Ry. Co.,* 207 Mass. 184, 194, 93 N. E. 590; *Brown* v. *Everhard,* 52 Wis. 205, 8 N. W. 725; *Blodgett* v. *Foster,* 120 Mich. 392, 79 N. W. 625. There was no error on the part of the trial court in finding, in effect, that the original contract as modified by the parties constituted a new and valid contract between them, and in deciding the case in accord with this finding. The first, second, and third reasons of appeal cannot be sustained.

The fourth, fifth, eighth and ninth reasons of appeal, relating to a claim of duress, are unfounded, as the issue of duress was not raised by the pleadings. Practice Book, 1908, p. 250, § 160.

The sixth, seventh, tenth, eleventh, twelfth, thirteenth and fourteenth reasons of appeal are based on the unfounded assumption that the court found that the defendant's letter of August 10th, 1920, recited

above, created a new contract or modified the original contract. The record discloses that this letter was deemed only a piece of evidence in the case, and not the foundation of the modification of the contract made in May, 1920. The terms in the letter: "This increase is to be paid to you, upon your finishing your work within two weeks from this date," was not found by the court to have been a part of the modified contract. These reasons of appeal therefore are not well taken.

The twentieth and twenty-first reasons of appeal are an attempt to raise a question of variance between certain allegations in the pleadings and the proof. These assignments of error cannot be sustained and for these reasons: if this variance were material, the question should have been raised when the evidence was presented. This was not done, and so no opportunity was given to the plaintiff to make his pleading, if insufficient, conform to the proof. The record discloses that the defendants were not misled or prejudiced in maintaining their defense by the claimed variance. The entire evidence was received without any objection on the ground of variance between allegation and proof. No motion was made to strike out any evidence upon the ground that it was not within the issues. It is now too late to raise such a point on appeal. *Scott* v. *Scott*, 83 Conn. 634, 641, 78 Atl. 314, and cases cited. A claim of variance between the proof and an allegation of the complaint, withheld until the evidence is closed, where the record discloses, and no claim is made to the contrary, that the trial proceeded as if the allegations of the complaint and the proof conformed, can seldom, if ever, avail a party upon appeal. *Palmer* v. *Hartford Dredging Co.*, 73 Conn. 182, 189, 47 Atl. 125.

The remaining reasons of appeal fall to the ground

under our ruling that the contract of February 10th, 1920, as modified by the parties, is a valid agreement. There is no error.

In this opinion the other judges concurred.